UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMERSON ELECTRIC CO., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>SIPCO, LLC, et al.,<br><br>    Defendants. | Case No.16-mc-80164-DMR<br><br>**ORDER RE JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 7 |

SIPCO, LLC and IP Co., LLC (together, "SIPCO") move to compel compliance with subpoenas served on third party Linear Technology Corporation ("LTC"). [Docket No. 7 (Joint Letter).] The subpoenas relate to patent litigation pending in the Northern District of Georgia. The parties submitted a joint letter setting forth their disputes, which focus on whether SIPCO's technical expert, Dr. Almeroth, should be exempt from a patent prosecution bar.[1] The court held a hearing on October 27, 2016. For the following reasons, the court finds that SIPCO has not met its burden of establishing an exemption for Dr. Kevin Almeroth.

I.  **BACKGROUND**

SIPCO is engaged in patent litigation with Emerson Electric Co. and related entities (the "Emerson Entities") in a consolidated action before the United States District Court for the Northern District of Georgia. *Emerson Electric Co. v. SIPCO LLC*, Case No. 15-cv-319-AT. The Emerson Entities' products provide monitoring and control of remote wireless devices in industrial environments. In the consolidated litigation, SIPCO alleges that the Emerson Entities'

---

[1] In their joint letter, the parties also describe disputes regarding the scope of topics identified by SIPCO in its deposition subpoena to LTC. The parties were ordered to meet and confer in the courthouse before the hearing, and they subsequently reported that they had reached some agreements about the deposition topics. The court ordered the parties to continue to meet and confer and to submit any remaining disputes in a joint letter by no later than December 15, 2016. [Docket No. 13 (Minute Order).]

products infringe its patents, while the Emerson Entities seek a declaratory judgment of non-infringement and invalidity of SIPCO's patents. SIPCO is also engaged in at least four *inter partes* review ("IPR") proceedings before the United States Patent and Trademark Office ("USPTO") that challenge the patents-in-suit. Some of the IPRs were filed by the Emerson Entities after initiation of the patent litigation.

LTC is neither a party to the litigation in the Northern District of Georgia, nor to the IPRs. According to SIPCO, the Emerson Entities' accused products contain LTC's wireless hardware and software products. SIPCO issued subpoenas to LTC for its source code and other documents. LTC seeks to condition its production of source code to SIPCO on the entry of an addendum to the protective order already in place in the underlying litigation. [Docket No. 5-4 (Proposed Order).] The proposed addendum includes a patent prosecution bar. At the hearing, the parties agreed to amend the patent prosecution bar to mirror that of the Northern District of California's model protective order, which states:

> Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.[2] To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.

Patent Local Rule 2-2 Interim Model Protective Order at § 8, *available at* http://cand.uscourts.gov/model-protective-orders.

---

[2] Prosecution includes, for example, original prosecution, reissue and reexamination proceedings.

The parties agree to the imposition of the patent prosecution bar, but dispute whether an exemption to the bar should be made for SIPCO's expert, Dr. Almeroth. SIPCO retained Dr. Almeroth at the beginning of its litigation with the Emerson Entities to serve as a technical expert. He is also SIPCO's technical expert in the four IPRs that challenge the patents-in-suit. According to SIPCO, his role in the IPRs is to examine asserted prior art and provide input on whether the prior art discloses elements of SIPCO's patent claims.

If applied, the prosecution bar will prohibit Dr. Almeroth from accessing LTC's source code while simultaneously continuing to participate in SIPCO's IPRs. Both parties acknowledge that Dr. Almeroth already has access to LTC's highly confidential documents which describe the hardware and software supplied to the Emerson Entities. SIPCO claims that Dr. Almeroth should be exempt from the prosecution bar so that he can access LTC's source code while continuing to serve as a technical expert in the IPRs. LTC argues that Dr. Almeroth should not be exempt from the prosecution bar.

## II. LEGAL STANDARD

Upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also In re Violation of Rule 28(D)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times*, 467 U.S. at 36.

Despite provisions in protective orders that specify that information designated as confidential may be used only for purposes of the current litigation, courts recognize that "there may be circumstances in which even the most rigorous efforts of the recipient of such [sensitive] information to preserve confidentiality in compliance with . . . a protective order may not prevent

3

inadvertent compromise." *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Id.* (quotation omitted). Accordingly, in patent cases, "courts authorize the inclusion of prosecution bars in protective orders as a less drastic alternative to the disqualification of counsel or experts." *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA (DMR), 2011 WL 197811, at *1 (N.D. Cal. Jan. 20, 2011) (citation omitted).

A party seeking to impose a patent prosecution bar bears the burden of showing that it "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *Deutsche Bank*, 605 F.3d at 1381. In this dispute, the parties have agreed to adopt a patent prosecution bar consistent with the Northern District of California's model protective order, which is presumed to set forth "reasonable conditions regarding the treatment of highly confidential information." *Kelora Sys., LLC v. Target Corp.*, No. C-10-04947 CW (LB), 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011).

Once a patent prosecution bar is imposed, the burden shifts to the party seeking an exemption to establish two things:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*EPL Holdings, LLC v. Apple*, No. C-12-04306 JST (JSC), 2013 WL 2181584, at *2 (N.D. Cal. May 20, 2013) (quoting *Deutsche Bank*, 605 F.3d at 1381). The two-part *Deutsche Bank* framework is not limited to counsel and may also be used to analyze whether a prosecution bar should apply to experts. *See Applied Signal Tech.*, 2011 WL 197811, at *4; *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2013 WL 5643334, at *3 (N.D. Cal. Oct. 15, 2013); *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, No. 11-cv-04494-WHO, 2013 WL 5935005, at *5 (N.D. Cal. Nov. 4, 2013).

4

### III. ANALYSIS

The parties agree to the entry of the patent prosecution bar, but dispute whether Dr. Almeroth should be exempt from it. If exempted, he will be able to access LTC's source code while continuing to serve as a technical expert in the IPRs that challenge SIPCO's patents-in-suit. SIPCO contends that Dr. Almeroth should be exempt because he is not engaged in competitive decisionmaking, and the potential injury to SIPCO of having to hire an additional expert to examine LTC's source code outweighs the risk of inadvertent use of LTC's source code. LTC responds that Dr. Almeroth is engaged in competitive decisionmaking, and that the risk of inadvertent use of the confidential information in its source code exceeds the potential injury to SIPCO.

#### A. Competitive Decisionmaking

As the party seeking an exemption from the prosecution bar, SIPCO has the burden to show that Dr. Almeroth's work "does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation." *Deutsche Bank,* 605 F.3d at 1381. Competitive decisionmaking is defined as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." *Id.* at 1378 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)). Because patent prosecution encompasses a broad range of activities, not all of which constitute competitive decisionmaking, the court must "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis." *Deutsche Bank,* 605 F.3d at 1380. In patent prosecution, those counsel or experts who perform substantive as opposed to administrative work are more likely to be competitive decisionmakers. *Id.* at 1379-80. For example, patent prosecution duties which simply involve reporting office actions, filing ancillary paperwork, staffing projects and coordinating client meetings will likely not involve competitive decisionmaking. *Id.* In contrast, competitive decisionmaking may be a regular part of representation for counsel or experts who are engaged in work such as:

5

> obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution.

*Id.* at 1380.

Here, the prosecution bar adopted by the parties prevents individuals who have access to source code from engaging in patent prosecution, which is defined to include "directly or indirectly drafting, amending, advising or otherwise affecting the scope or maintenance of patent claims." Patent Local Rule 2-2 Interim Model Protective Order at § 8.

"Quite clearly, IPR proceedings carry the potential to modify—directly or indirectly—the scope or maintenance of patent claims." *Software Rights Archive, LLC v. Facebook, Inc.*, No. 12-cv-03970-RMW-PSG, 2014 WL 116366, at *3 (N.D. Cal. Jan. 13, 2014). Confidential information gained from litigation may be used in IPRs "to prophylactically cede claim scope through limiting arguments." *Id.* Patent claims may be restructured in reexamination or review proceedings "in a way that would undoubtedly benefit" from access to proprietary information about a competitor. *Grobler v. Apple Inc.*, No. C-12-01534 JST (PSG), 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013). Access to confidential information can "provide a tactical advantage to the patent holder in its effort . . . to navigate between prior art and its infringement claims." *Shared Memory Graphics, LLC v. Apple, Inc.*, No. C-10-2475 VRW (EMC), 2010 WL 4704420, at *1 (N.D. Cal. Nov. 12, 2010).

Here, SIPCO concedes that the IPR proceedings potentially could modify the scope of its patent claims. However, SIPCO attempts to distinguish Dr. Almeroth's role by describing it as being limited to examining prior art and merely "providing input" on what the prior art discloses. SIPCO contends that this differentiates Dr. Almeroth's function from that of an attorney whose role is to use Dr. Almeroth's "input" to advise the client and make arguments. Such hair-splitting is unpersuasive. To begin with, *Deutsche Bank* identifies "investigating prior art relating to . . . inventions" as the kind of substantive patent prosecution work that likely amounts to competitive decisionmaking. *Deutsche Bank*, 605 F.3d at 1380. Moreover, by reviewing prior art and

6

"providing input," Dr. Almeroth is at the very least indirectly affecting the scope or maintenance of SIPCO's patent claims, even if counsel is responsible for using the expert's input to advise the client on the ultimate strategic decisions. Dr. Almeroth's "input" thus falls squarely within the activities prohibited by the prosecution bar. *See* Patent Local Rule 2-2 Interim Model Protective Order at § 8 (barring individual who receives access to source code from being involved in patent prosecution, which includes "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims."). In sum, SIPCO has not met its burden of establishing that Dr. Almeroth is not engaged in competitive decisionmaking in the IPR proceedings.

### B. Balancing Potential Injury to SIPCO Against the Risk of Inadvertent Use

SIPCO argues that even if Dr. Almeroth is a competitive decisionmaker, the injury that SIPCO would suffer if Dr. Almeroth is not exempted from the prosecution bar exceeds the risk of inadvertent use of LTC's source code. At the hearing, SIPCO confirmed that it has two options if Dr. Almeroth is not exempted from the prosecution bar. Dr. Almeroth could review LTC's source code and provide expert assistance to SIPCO in the litigation, but would be barred for a defined period of time from participating in IPRs that challenge SIPCO's patents-in-suit. Alternatively, Dr. Almeroth could participate in both the IPRs and the litigation, but would not be allowed to review LTC's source code. Under this second option, SIPCO would have to retain a separate source code expert. In articulating its argument under the second *Deutsche Bank* prong, SIPCO appears to opt for the latter option, for it claims that it will be greatly harmed if it is forced to hire an additional expert to view the source code, and to present two experts at trial. SIPCO argues that in contrast, the risk to LTC of inadvertent use of its confidential information is not great because Dr. Almeroth has reviewed LTC's confidential documentation, and LTC's source code will merely confirm what he has already seen.

In response, LTC argues that even though Dr. Almeroth has had access to certain highly confidential documentation, LTC's source code is the "crown jewel" of its wireless mesh network business. Joint Letter at 3. LTC asserts that Dr. Almeroth's access to its source code thus imposes a heightened risk of inadvertent use. LTC also cautions the court not to accept SIPCO's glib

7

argument that Dr. Almeroth's review of the source code will surely confirm rather than augment the confidential information that he has already seen. According to LTC, the source code could also contradict Dr. Almeroth's interpretation of the confidential documentation, which could lead to a strategic change in articulating the scope of claims.

As the party seeking an exemption, SIPCO bears the burden of establishing that the injury from restrictions imposed on its choice of expert exceeds the risk of inadvertent use posed to LTC. *Deutsche Bank,* 605 F.3d at 1381. In evaluating harm, the court must consider several factors: the extent and duration of the expert's past history in assisting the client in litigation and before the USPTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on another expert to provide assistance before the USPTO. *Id.* However, "the factors that make an [expert] so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation." *Id.* Even where courts have allowed litigation counsel to participate in review and reexamination proceedings despite a prosecution bar, the court limited such participation to tasks that did not involve assisting in any crafting or amendment of patent claims. *Grobler*, 2013 WL 3359274 at *2; *EPL Holdings*, 2013 WL 2181584, at *4.

SIPCO retained Dr. Almeroth at the beginning of the litigation to serve as a technical expert. It has built a relationship with him, and has great confidence in his abilities. Thus, having to drop him from the IPR work, or alternatively, having to identify a separate source code expert at this juncture clearly will impose a burden on SIPCO. However, SIPCO has "made no showing that there is a dearth of experts in the field" or that it will be "seriously prejudiced by the imposition of the prosecution bar." *See, e.g., Applied Signal Tech.*, 2011 WL 197811 at *5. SIPCO makes a conclusory argument that it would be highly detrimental to present a separate source code expert along with Dr. Almeroth at trial, but does not offer any substance to support the claim. Finally, LTC is not involved in the IPRs and thus did not initiate IPRs simply to force a prosecution bar and thereby secure a tactical advantage over SIPCO. *See Software Rights Archive*, 2014 WL 116366, at *3 (stating concerns about "perverse incentives" to file USPTO proceedings

as a tactic to exclude a party's chosen litigation counsel); *Mirror Worlds, LLC v. Apple, Inc.*, No. 6:08-cv-88, 2009 WL 2461808, at *2 (E.D. Tex. Aug. 11, 2009).

In sum, there is a significant risk that Dr. Almeroth could inadvertently use LTC's source code to affect the scope and maintenance of SIPCO's patent claims in the IPR proceedings. The risk of inadvertent disclosure or competitive use of LTC's source code exceeds the injury that SIPCO will suffer from having to find an alternative expert to view LTC's source code or participate in IPRs. Under the *Deutsche Bank* test, SIPCO has failed to demonstrate that Dr. Almeroth should be exempt from the prosecution bar.

## IV. CONCLUSION

For the foregoing reasons, Dr. Almeroth shall be subject to the prosecution bar. The parties have submitted a proposed addendum to the protective order already in place in the consolidated action before the Northern District of Georgia. At the hearing, the parties agreed to amend the patent prosecution bar to mirror that of the Northern District of California's model protective order. Within seven days of this order, the parties shall resubmit a proposed addendum for this court's signature.

**IT IS SO ORDERED.**

Dated: November 21, 2016



DONNA M. RYU
United States Magistrate Judge